

FILED

JAN 2 4 2017

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

# UNITED STATES DISTRICT COURT

for the

Eastern District of Virginia

In the Matter of the Search of )
)
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
IN THE MATTER OF THE SEARCH OF DIGITAL EVIDENCE  STORED )
AT THE HAMPTON OFFICE OF THE DRUG ENFORCEMENT )
ADMINISTRATION, 22 ENTERPRISE PARKWAY, SUITE 340, )
HAMPTON, VA FOR DEA CASE #GW-15-0017 SEIZED ON OCTOBER )
20, 2016

Case No. 4:17 **SW 3**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

ATTACHMENT A

located in the _____ Eastern _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Reviewed by:

Amy E. Cross
Special Asst. U.S. Attorney

ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 846 | Conspiracy to Distribute and Possess With Intent to Distribute Cocaine and Heroin |
| 21 U.S.C.841(a)(1),(b)(1)(C) | Possession with Intent to Distribute Cocaine and Heroin |
| 18 U.S.C. 924(c)(1)(A) | Possession of a Firearm in a Drug Trafficking Crime |
| 18 U.S.C. 1952(a)(3) and 2 | Interstate Travel in Aid of Racketeering |

The application is based on these facts:

See attached Affidavit by TFO K.C. Brown, DEA

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Taskforce Officer K.C. Brown, DEA

*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1/24/2017

City and state: Norfolk, VA

*Judge's signature*

Douglas E. Miller
United States Magistrate Judge

*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF PROPERTY TO BE SEIZED

The listed items are physically located in Property and Evidence Section at the DEA Hampton POD Office at 22 Enterprise Parkway Suite 340, Hampton, Virginia.

| DEA ITEM # | DEVICE DESCRIPTION | DESIGNATED AS |
|---|---|---|
| a. ITEM N-55 | Apple iPhone in a black Otterbox case, model A1661 | DEVICE 1 |



| | | |
|---|---|---|
| b. ITEM N-95 | White HTC cellular telephone (no other markings) | DEVICE 2 |





c.   ITEM N-95        Black Samsung LTE cellular phone                      DEVICE 3



d.   ITEM N-97        Black Alcatel model AU62C, Hex: A100004AD71D70        DEVICE 4



e.   ITEM N-97        Black HTC cellular telephone in a black protective case,   DEVICE 5
                      37H20099-00M-9



f.  ITEM N-105    Garmin Nuvi GPS, Serial Number: 23A065040    DEVICE 6



g.  ITEM N-106    Verizon Samsung flip-style cellular telephone Model: SM-    DEVICE 7
                  B311V, SKU: SMB311VZPP, labeled with phone number
                  213-418-4844



h.  ITEM N-106    Verizon Samsung flip-style cellular telephone Model: SM-    DEVICE 8
                  B311V, SKU: SMB311VZPP, MCID HEX:
                  A000004755E792.



i.    ITEM N-106    Blackberry cellular telephone, Serial Number: PCB-54694-    DEVICE 9
                    006_rev1.



j.    ITEM N-106    Silver Apple iPhone in a black Mephie case (no other    DEVICE 10
                    markings)



k.    ITEM N-107    Apple iPhone S, model A1687    DEVICE 11



l.   ITEM N-108    White Samsung Galaxy, model SM-G531H, SSN:      DEVICE 12
                   G531HGSMH



m.   ITEM N-109    LG flip-style cellular telephone S/N: 605UTHJ969009      DEVICE 13



n.   ITEM N-110    White Apple iPhone in case with lion displayed on back of      DEVICE 14
                   case, model A1533, IMEI: 013966008579184



o.   ITEM N-111   Silver and black Apple IPhone, model A1533          DEVICE 15



p.   ITEM N-130   White Galaxy S3 cellular telephone Model: SCH 1535,          DEVICE 16
                  SKU: SCH1535RWB , IMEI: 9900003435473380



q.  ITEM N-132      Samsung Tablet, CE0168, GT P3113TS,          DEVICE 17
                    RF2CC0BM5M51H

 

r.  ITEM N-133      White Samsung S3 cellular telephone Model: SPHL710,   DEVICE 18
                    DEC: 256 691 432 603 310 416, HEX: 990 001 163 283 50



s.  ITEM N-135      Gray Samsung cellular telephone MAC: 500 1BB 8E8 OF4,   DEVICE 19
                    DEC: 268 435 461 714 171 889, HEX: A00 000 39D 83E
                    F1, Model: SPH-D710



t.   ITEM N-137     SIM card                                                    DEVICE 20



u.   ITEM N-140     White Galaxy S4 cellular telephone Model: SCH-1646,        DEVICE 21
                    SKU: SCH1545ZWV, IMEI: 990003377656174



v.   ITEM N-141     White Samsung Galaxy S3 cellular telephone Model: SCH-     DEVICE 22
                    1535WHT16GB, IMEI: 990003336829342



w.   ITEM N-142       Tracfone cellular telephone Model: H31LJS5ZHC, MEI:        DEVICE 23
                      011616005389242



**ATTACHMENT B**

**EVIDENCE SOUGHT**

1. All records, documents, and materials on the Device described in Attachment A that relate to violations of Title 21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Heroin; Title 21 U.S.C. § 841(a)(1) and (b)(1)(c) (Possession with Intent to Distribute and Distribution of Cocaine and Heroin); Title 18 U.S.C. § 922(g)(1) (Possession of a Firearm in Commission of a Drug Trafficking Crime); and Title 18 U.S.C. § 1952(a)(3) (Interstate Travel in Aid of Racketeering)  and aiding and abetting others in those crimes, including:

   a. Any information related to drug customers (including, but not limited to names, addresses, telephone numbers, e-mail addresses, or any other identifying information);
   b. Types, quantities, amounts, and prices of drugs trafficked as well as dates, times, places, and amounts of drug, firearm, and ammunition transactions;
   c. Any information related to sources of drugs, firearms, and ammunition (including, but not limited to names, addresses, telephone numbers, e-mail addresses, or any other identifying information);
   d. Any information documenting schedule or travel (including, but not limited to calendars and GPS location information);
   e. Any communications (including, but limited to telephone calls, voice mails, SMS and MMS text messages, instant messages, and e-mails) relating to the procurement, possession, sale, purchase, or transference of drugs/controlled substances, drug paraphernalia, firearms, and ammunition;
   f. All bank records, checks, credit card bills, account information, and other financial records relating to the procurement, possession, sale, purchase, or transference of drugs/controlled substances, drug paraphernalia, firearms, and ammunition; and
   g. Photographic or other images relating to procurement, possession, sale, purchase, or transference of drugs/controlled substances, drug paraphernalia, or firearms and ammunition.

2. Evidence of user attribution showing who used, owned, or controlled the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, address books, registry entries, configuration files, usernames and passwords, encryption keys, media access control (MAC) addresses, documents, browsing history, user profiles, e-mail, telephone and e-mail contacts, "chat," instant messaging logs, photographs, videos, and correspondence;

3. Records evidencing the use of the Device to facilitate drug, firearm, and ammunition procurement, sale, purchase or trafficking using the Internet, including:

I



    a. Records of Internet Protocol addresses used; and

    b. Records of Internet activity, including chats, online email, firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form contained in or used by the Devices.

2

FILED

JAN 2 4 2017

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR ISSUANCE OF SEARCH WARRANTS

4:17 SW3

Your Affiant, Kendall C. Brown, being duly sworn, deposes and states the following:

### INTRODUCTION

1.      Your affiant is an investigator or law enforcement officer of the United States (U.S.) within the meaning of Title 18, United States Code (U.S.C.), Section (§) 2510(7), that is, an officer of the U.S. who is empowered to conduct investigations and to make arrests.

2.      Your affiant is currently a member of a task force conducting the investigation referred to in this affidavit.   This investigation involves a multi-faceted drug trafficking organization (DTO) engaged in the importation, interstate transportation, and distribution of multi-kilograms of cocaine and the laundering of U.S. currency.  The activity of this DTO involves overt acts and criminal activity that have been committed since at least 2014 throughout the U.S., including the Eastern District of Virginia (EDVA).  Your affiant makes this affidavit in support of an application for search warrants to gather evidence of this criminal enterprise, including smuggling and distribution of controlled substances, money laundering, and related criminal offenses.

### TRAINING AND EXPERIENCE OF YOUR AFFIANT

3.      Your affiant has been a sworn Hampton Police Officer for the past 17 years.  Your affiant has been assigned in that capacity as a Task Force Officer with the Drug Enforcement Administration (DEA) since December 2012.  Your affiant has conducted criminal investigations of complex drug trafficking conspiracies involving the illegal importation, transportation, distribution, and possession with the intent to distribute controlled substances, as well as continuing criminal enterprise activities.  Your Affiant is currently assigned to the DEA Norfolk Resident Office, Hampton Post of Duty.   In this position, your Affiant is responsible for investigating various crimes, including the manufacture and distribution of controlled substances and other violations of the U.S.C.  Your affiant has also become familiar with and utilized a wide variety of investigative techniques, including but not limited to the development of cooperating sources, source debriefings, physical surveillance, telephone call detail record analysis, the use of pen register / trap and trace (PRTT) devices, and the interception of wire and electronic communications.  These investigations have led to numerous arrests and convictions for violations of federal laws.

4.      Your Affiant has received specialized training in the enforcement of laws concerning investigations into the illicit distribution of controlled substances.  Your Affiant is familiar with the operation of illicit DTO's and methods used to import controlled substances, distribute controlled substances, and launder the proceeds derived from such unlawful activities.

5.      This investigation is being conducted by special agents, detectives, and analysts of the DEA as well as representatives from the Federal Bureau of Investigation (FBI), the Newport News Police Department (NNPD), the Hampton Police Division (HPD), and the United States Attorney's Office (USAO). The respective special agents, detectives, and analysts assigned to this investigation are collectively hereinafter referred to as "the investigative team."

6.      Collectively, your affiant and other members of the investigative team have participated in the preparation of numerous affidavits for search and/or seizure warrants and the interception of wire and electronic communications, participated in the execution of numerous search and seizure warrants, and conducted hundreds of interviews and debriefings in connection with violent crime, drug trafficking, and financial investigations. As such, the investigative team is familiar with the operation of sophisticated DTOs.

7.      Your affiant is aware that members of DTOs routinely utilize wire and electronic communication facilities including landline telephones, cellular telephones, and public telephones, to communicate operational directives and information concerning the conduct of the DTO's illegal activities to other organization members.   These communications of time-sensitive information are critical to the success of a DTO's illegal activities. The critical nature of this information stems from the necessity of the DTO's management to provide direction for the importation, interstate transportation, and distribution of multi-kilogram quantities of narcotics, as well as the subsequent laundering of the proceeds of these illegal activities.

8.      Your affiant knows that cellular telephones are the easiest form of communication for drug traffickers who frequently travel to different locations to distribute illegal narcotics. Cellular telephones are not only utilized for telephonic communication, but also can also be used to communicate through texts, e-mails, photographs, and a variety of different applications[1] These applications can not only be used to communicate with other co-conspirators, but can also be used to arrange hotel, vehicle, and airline reservations. Such activity may have the appearance of legal activity, but are actually done to help further the facilitation of their illegal drug activity.

9.      Your affiant also knows that drug traffickers often travel to different areas that are unfamiliar to them. Therefore, drug traffickers often utilize electronic equipment, such as a Global Positioning System (GPS) device.  These GPS devices assist drug traffickers by reaching their destination in a timely manner, while they attempt to avoid law enforcement detection. This type of GPS device is especially common for drug traffickers who travel throughout the country to further their criminal enterprise.

---

[1]      Applications, which are more commonly referred to as "Apps," are specific computer programs that are downloaded to a mobile device such as a "smart phone" and are utilized to perform specific tasks such as communicating with other mobile devices via the internet.

2

10.     Your affiant also knows that tablets/computers are also common tools for communications and record keeping for drug traffickers. Though most tablets are not equipped with traditional telephonic connections, "apps" can be downloaded to these tablets which allows for different forms of communication to be employed when it is connected to a wi-fi / internet network. Further, your affiant knows that such tablets often contain records, photographs, ledgers, as well as other evidence supporting their illegal drug dealing activity.

## BASIS FOR FACTS CONTAINED IN AFFIDAVIT

11.     This affidavit is being submitted for the limited purpose of securing authorization for search and seizure warrants. For this reason, your affiant has not included each and every fact known to the investigative team concerning this federal Grand Jury investigation. Rather, your affiant has set forth only those facts that are believed to be necessary to establish probable cause for search and seizure warrants. Facts not set forth herein are not being relied upon in reaching the conclusion that the authorization for search and seizure warrants should be issued. Nor is it requested that the Court rely upon any facts not set forth herein in reviewing this affidavit.

12.     Your affiant has personally participated in the investigation of the offenses described in this affidavit and as a result of your affiant's participation in this criminal investigation and a review of reports made to your affiant by other members of the investigative team; your affiant is familiar with the facts and circumstances of this criminal investigation. On the basis of this familiarity, and on the basis of the other information, which your affiant has reviewed and determined to be reliable, your affiant alleges the following:

## CRIMINAL OFFENSES

13.     This request for search warrants is made in relation to the following offenses occurring in the EDVA and elsewhere:

a.  Conspiracy to Distribute and Possess with Intent to Distribute Cocaine and Heroin in violation of Title 21, U.S.C. Section 846;

b.  Possession with Intent to Distribute and Distribution of Cocaine and Heroin in violation of Title 21, U.S.C. Section 841(a)(1) and (b)(1)(C);

c.  Possession of a Firearm in a Drug Trafficking Crime in violation of Title 18, U.S.C. Section 924(c)(1)(A); and

d.  Interstate Travel in Aid of Racketeering in violation of Title 18, U.S.C. Section 1952(a)(3) and 2.

3

## ITEMS TO BE SEARCHED

14.     Your affiant makes this affidavit in support of an application for search warrants for the following electronic devices that are located within the EDVA:

|   | DEA ITEM # | DEVICE DESCRIPTION | DESIGNATED AS |
|---|---|---|---|
| a. | ITEM N-55 | Apple iPhone in a black Otterbox case, model A1661 | DEVICE 1 |
| b. | ITEM N-95 | White HTC cellular telephone (no other markings) | DEVICE 2 |
| c. | ITEM N-95 | Black Samsung LTE cellular phone | DEVICE 3 |
| d. | ITEM N-97 | Black Alcatel model AU62C, Hex: A100004AD71D70 | DEVICE 4 |
| e. | ITEM N-97 | Black HTC cellular telephone in a black protective case, 37H20099-00M-9 | DEVICE 5 |
| f. | ITEM N-105 | Garmin Nuvi GPS, Serial Number: 23A065040 | DEVICE 6 |
| g. | ITEM N-106 | Verizon Samsung flip-style cellular telephone Model: SM-B311V, SKU: SMB311VZPP (phone number) | DEVICE 7 |
| h. | ITEM N-106 | Verizon Samsung flip-style cellular telephone Model: SM-B311V, SKU: SMB311VZPP, MCID HEX: A000004755E792. | DEVICE 8 |
| i. | ITEM N-106 | Blackberry cellular telephone, Serial Number: PCB-54694-006_rev1. | DEVICE 9 |
| j. | ITEM N-106 | Silver Apple iPhone in a black Mephie case (no other markings) | DEVICE 10 |
| k. | ITEM N-107 | Apple iPhone S, model A1687 | DEVICE 11 |
| l. | ITEM N-108 | White Samsung Galaxy, model SM-G531H, SSN: G531HGSMH | DEVICE 12 |
| m. | ITEM N-109 | LG flip-style cellular telephone S/N: 605UTHJ969009 | DEVICE 13 |

4

| DEA ITEM # | DEVICE DESCRIPTION | DESIGNATED AS |
|---|---|---|
| n. ITEM N-110 | White Apple iPhone in case with lion displayed on back of case, model A1533, IMEI: 013966008579184 | DEVICE 14 |
| o. ITEM N-111 | Silver and black Apple IPhone, model A1533 | DEVICE 15 |
| p. ITEM N-130 | Samsung cellular telephone Model: SM-6531H UD, SSN: 6531HGSMH, Serial Number: R514H404B39A | DEVICE 16 |
| q. ITEM N-132 | Samsung Tablet, CE0168, GT P3113TS, RF2CC0BM5M51H | DEVICE 17 |
| r. ITEM N-133 | White Samsung S3 cellular telephone Model: SPHL710, DEC: 256 691 432 603 310 416, HEX: 990 001 163 283 50 | DEVICE 18 |
| s. ITEM N-135 | Gray Samsung cellular telephone MAC: 500 1BB 8E8 OF4, DEC: 268 435 461 714 171 889, HEX: A00 000 39D 83E F1, Model: SPH-D710 | DEVICE 19 |
| t. ITEM N-137 | SIM card | DEVICE 20 |
| u. ITEM N-140 | White Galaxy S4 cellular telephone Model: SCH-1646, SKU: SCH1545ZWV, IMEI: 990003377656174 | DEVICE 21 |
| v. ITEM N-141 | White Samsung Galaxy S3 cellular telephone Model: SCH-1535WHT16GB, IMEI: 990003336829342 | DEVICE 22 |
| w. ITEM N-142 | Tracfone cellular telephone Model: H31LJS5ZHC, MEI: 011616005389242 | DEVICE 23 |
| x. | Factory-installed GPS in a 2015 Subaru Outback, VIN: 4S4BSELC4F3292342 bearing Pennsylvania license plates JTG 1058 | DEVICE 24 |

15.    Many of the above-listed electronic devices have specific identifiers, such as a model/serial number, which cannot be accessed without searching through the electronic data in the telephone. For this reason, your affiant has also included the "non-drug" evidence numbers assigned to each item by DEA during the inventory process. The above-listed items will be referred to by DEVICE NUMBERS (DEVICES 1-24) throughout the remainder of this affidavit.

All of the above-listed items except for **DEVICE 24** are physically located in Property and Evidence Section at the DEA Hampton POD Office at 22 Enterprise Parkway Suite 340, Hampton, Virginia.  **DEVICE 24** is a factory-installed GPS device inside a 2015 Subaru Outback that is being stored at the Hampton Police Division, 2713 Magruder Blvd, Hampton, Virginia.

16.     The applied-for warrant would authorize the forensic examination of **DEVICES 1 through 24** for the purpose of identifying electronically stored data particularly described in Attachment B.

## FACTS & CIRCUMSTANCES SUPPORTING PROBABLE CAUSE

### Anticipatory Search Warrants

17.     On October 18, 2016, U.S. Magistrate Judge Robert Krask issued anticipatory federal search warrants for (1) a white enclosed trailer bearing California license plate 4NY7317 and having a Vehicle Identification Number (VIN): 3H3V532C8GT011036; and (2) 1054 39th Street, Newport News, VA.

18.     On October 20, 2016, prior to the execution of the search warrants, members of the investigative team conducted surveillance and monitored the actions of the co-conspirators.  Based upon those observations, which involved the "trigger events" listed in the affidavit, the two search warrants were executed at 1054 39th Street, Newport News, Virginia, at approximately 11:40 a.m. on October 20, 2016.  During the course of the searches, agents seized approximately 55 kilograms of cocaine HCL[2]; $1,073,154 in U.S. currency[3]; packaging and manufacturing tools including a Pyrex measuring cup, baking soda, sifters, Ziploc bags, and razor blades consistent with the manufacturing of crack cocaine; heat/vacuum sealing equipment/bags, which are consistent with the bags recovered that contained some of the currency and cocaine; and a .410 caliber "Judge" revolver, **DEVICE 1 and DEVICE 11**.

### Search of 2015 Subaru Outback

19.     KUNA was stopped by law enforcement operating a 2015 Subaru Outback VIN: 4S4BSELC4F3292342 bearing Pennsylvania license plates JTG 1058 as he left 1054 39th Street, Newport News, VA.  A probable cause search of the 2015 Subaru Outback yielded **DEVICE 6, DEVICE 7, DEVICE 8, DEVICE 9, DEVICE 10, and DEVICE 24**.

### Search of Ford Fusion, DANIEL RODRIGUEZ, and HILARIO RODRIGUEZ

---

2     Five of the individually-wrapped kilograms of cocaine field-tested positive for the presence of cocaine.
3     This includes the combined currency seized from CARTER, the trailer, and 1054 39th Street, Newport News, VA.

20.     Following the arrests of DANIEL RODRIGUEZ and HILARIO RODRIGUEZ, agents searched both persons incident to arrest, as well as a Ford Fusion bearing New York license plates HJE-9606 that HILARIO RODRIGUEZ rented in Baltimore, Maryland on October 15, 2016. DANIEL RODRIGUEZ and HILARIO RODRIGUEZ then used this vehicle to drive to the EDVA. On October 20, 2016, DANIEL RODRIGUEZ and HILARIO RODRIGUEZ used this vehicle to drive to 1054 39th Street, Newport News, Virginia. A probable cause search of the rental vehicle led to the seizure of **DEVICE 2** and **DEVICE 3** from the center console, **DEVICE 4** and **DEVICE 5** from the trunk, **DEVICE 12** from the suitcase of DANIEL RODRIGUEZ in the trunk. A business card with "MC", 804 591 9887, "1054 39th St, Newport News, VA" written on the back of the card was also recovered from DANIEL RODRIGUEZ's wallet.

## Search Incident to Arrest of MARVIN CARTER, DANIEL RODRIGUEZ and HILARIO RODRIGUEZ

21.     On October 20, 2016, defendants Marvin CARTER, Daniel RODRIGUEZ, and Hilario RODRIGUEZ were arrested on narcotics trafficking crimes. Each of the defendants was searched incident to arrest. **DEVICE 13** was recovered from Marvin CARTER. **DEVICE 14** was recovered from Daniel RODRIGUEZ, and **DEVICE 15** was recovered from Hilario RODRIGUEZ.

## Search of 13309 #D Preakness Drive, Newport News, VA

22.     During the course of the execution of the search warrant at 1054 39th Street, Newport News, VA, CARTER was placed under arrest for Conspiracy to Distribute More than Five Kilograms of Cocaine. CARTER was orally advised of his Miranda Rights by your affiant and acknowledged that he understood his rights and agreed to speak with members of the investigative team. During the course of the interview, CARTER consented to a search of his residence located at 13309 #D Preakness Drive, Newport News, VA. The consent search led to the seizure of ~~DEVICE 12~~, ~~DEVICE 13~~, ~~DEVICE 14~~, ~~DEVICE 15~~, DEVICE 16, DEVICE 17, DEVICE 18, DEVICE 19, DEVICE 20, and DEVICE 22. Device 21, Device 23

## Arrests & Criminal Complaint

23.     As a result of the surveillance, the search warrant execution, and the seizure of numerous pieces of evidence/contraband, CARTER, KUNA, DANIEL RODRIGUEZ, and HILARIO RODRIGUEZ were arrested on October 20, 2016, and were subsequently charged in a criminal complaint issued by U.S. Magistrate Judge Robert Krask on October 21, 2016, with Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or more of Cocaine in violation of Title 21, U.S.C., Section 846 (filed with the Court under Criminal Number 4:16mj200).

7

**Indictment**

24.    On November 15, 2016, a Federal Grand Jury in Newport News, Virginia (VA), returned a seven-count indictment (filed with the Court under Criminal Number 4:16cr76) against four members of this DTO including CARTER, KUNA, DANIEL RODRIGUEZ, and HILARIO RODRIGUEZ charging them with offenses occurring in the EDVA and elsewhere, including: Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or more of Cocaine in violation of Title 21, U.S.C. Section 846; Possession with Intent to Distribute and Distribution of 5 Kilograms or more of Cocaine in violation of Title 21, U.S.C. Section 841(a)(1) and (b)(1)(B); Possession with Intent to Distribute 500 grams or more of Cocaine in violation of Title 21, U.S.C. Section 841(a)(1) and (b)(1)(B); Possession with Intent to Distribute Heroin in violation of Title 21, U.S.C. Section 841(a)(1) and (b)(1)(C); Possession of a Firearm in a Drug Trafficking Crime in violation of Title 18, U.S.C. Section 924(c)(1)(A); Interstate Travel in Aid of Racketeering in violation of Title 18, U.S.C. Section 1952(a)(3) and 2; and Maintaining Drug Involved Premises in violation of Title 21, U.S.C. Section 856(a)(1).

**Location and Condition of Devices**

25.    DEVICES 1 through 24 are currently in the lawful possession of the DEA. As described in the above paragraphs, these devices were seized during the execution of search warrants, consent searches and arrests by the DEA on October 20, 2016. DEVICES 1 through 23 are securely stored in Property and Evidence Section at the DEA Hampton POD Office at 22 Enterprise Parkway Suite 340, Hampton, Virginia. While **DEVICE 24**, a factory-installed GPS device inside a 2015 Subaru Outback, is being stored at the Hampton Police Division, 2713 Magruder Blvd, Hampton, Virginia. In my training and experience, I know that **DEVICES 1 through 24** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when **DEVICES 1 through 24** first came into the possession of the DEA.

## TECHNICAL TERMS

26.    Based on my training and experience, I use the following technical terms to convey the following meanings:

   a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These

capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.   Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.   Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.   GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation.   The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.   These signals are sent by radio, using specifications that are publicly available.   A GPS antenna on Earth can receive those signals.   When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

9

e. <u>PDA</u>: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. <u>Tablet</u>: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, which is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. <u>Pager:</u> A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

h. <u>IP Address:</u> An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses.  Some computers have static-that  is, long-term-IP addresses, while other computers have dynamic-that is, frequently changed-IP addresses.

i. <u>Internet</u>: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international

10

borders, even when the devices communicating with each other are in the same state.

27.     Based on my training, experience, and research, I know that **DEVICES 1 through 24** have capabilities that allow the devices to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYIS

28.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how **DEVICES 1 through 24** were used, the purpose of the use, who used the devices, and when. There is probable cause to believe that this forensic electronic evidence might be on **DEVICES 1 through 24** because:

a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

11

     e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    30.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **DEVICES 1 through 24** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of each of the entire mediums, that might expose many parts of the devices to human inspection in order to determine whether the devices constitute evidence described by the warrant.

    31.    *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of this warrant at any time in the day or night.

## AUTHORIZATION REQUEST

    32.    Based on the facts set forth herein, combined with the training and experience of the investigative team, your affiant concludes that the information contained herein demonstrates that CARTER, KUNA, DANIEL RODRIGUEZ, and HILARIO RODRIGUEZ are involved in the criminal offenses described herein paragraph 13. Your affiant further believes that contained within the "items to be searched" (described in paragraph 14 and Attachment A), which have been associated with CARTER, KUNA, DANIEL RODRIGUEZ, and HILARIO RODRIGUEZ, probable cause exists to believe that evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes are located within those devices. Therefore, your affiant respectfully requests the issuance of search warrants for the "items to be searched" (described herein as **DEVICES 1 through 24**) to seize the items described in Attachment "A."

                                 Kendall C. Brown, Task Force Officer
                                 Drug Enforcement Administration

Subscribed to and sworn before me this 24 day of January, 2017.

                                 UNITED STATES MAGISTRATE ~~COURT~~ JUDGE
At Newport News, Virginia.              Douglas E. Miller
                                 United States Magistrate Judge

12

REVIEWED:

Howard J. Zlotnick
Managing Assistant United States Attorney

Amy E. Cross
Special Assistant United States Attorney

13